McClelland, J.
This matter comes on to be heard upon the exceptions to the third account of J. F. Atwood, as administrator of the estate of the decedent. The exceptions covered two points. First that the account fails to disclose as assets in the hands of said administrator the sum of $32.00 now on deposit in The Huntington National Bank of Columbus. Second, that the administrator was never authorized by *261 the court to deposit any funds of the estate in The Dollar Building & Loan Company of Columbus, Ohio.
The exceptor asks that the administrator should be charged with the $32.00 and also that the administrator should be charged with the full amount of the investment in The Dollar Building & Loan Company which investment was made in certificates of deposit, and which are now worth less than the face value thereof.
The record of this case shows that J. F, Atwood was appointed administrator on November 25, 1921, and that he gave bond as required by statute in the amount of $4000.00, and that on June 2, 1922, an inventory was filed which disclosed money in the amount of $2060.00, and securities in the amount of $412.00, making a total of $2472.00.
The first account was filed on April 2, 1924, and was confirmed on May 29, 1924. This account shows that the administrator had received the sum of $2472.00, and that he had paid out the sum of $540.00, leaving a balance of $1932.00. At the bottom of the account we find this significant notation: “This estate and questions regarding funds in it is in litigation is Cheyenne, Wyoming. Cannot be closed for some time yet. J. F. A.”
The administrator testified that the notation was made by him, and that the initials thereon are his and were placed there by him.
The record further shows that on March 25, 1932, the administrator filed his second account, which was confirmed May 6, 1932.- In this account the administrator charges himself with $1932.00 being the amount shown in his last account, and also interest on certificates of The Dollar Building & Loan Company from April 26, 1926 to September 26, 1931, in the amount of $522.50. The total amount therefor with which he charges himself is $2454.50. From that amount he deducts $80.00 as premiunis paid on his bond, leaving a balance of $2374.50. This account was confirmed on May 6, 1932.
The record further discloses that by an order of the court the sum of $546.20 was paid to the guardian of John Smith the only heir, and that there was left the sum *262 of $32.00 in The Huntington National Bank, and $1900.00 evidenced by certificates of deposit issued by The Dollar Building & Loan Company of Columbus, Ohio.
Upon a hearing of the matter it was disclosed that John Smith an heir, who has recently died, was an incompetent, and that for a number of years he was under guardianship, the first guardian being Patrick Smith, who was appointed by the Probate Court of Union county. This guardian died, and subsequently another guardian was appointed by the Probate Court in Union county, Ohio, but who was removed on the ground that he was a nonresident of the state of Ohio. The Probate Court of Union county appointed another guardian who qualified but who subsequently resigned. Then subsequently, by agreement with the Probate Court of Union county, that court waived jurisdiction to the Probate Court in Franklin county, and Mary Smith was then appointed guardian, who continued to serve until the death of her ward. The $546.20 was paid to her by order of the Probate Court of Franklin county, which order was made on December 3, 1932, and was paid as a partial distribution. The administrator testified that at'the time he paid this partial distribution to the guardian, she was apprised of the investment, but made no protest against same at that or any other time.
The ward John Smith is now deceased, but apparently was a resident of Union county at the time of his death. An administrator has been appointed by the Probate Court of Union county to administer the estate of the ward John Smith.
At the hearing Mr. Atwood the administrator, also testified that before the deposit was made in the building and loan of the certificates as hereinbefore mentioned, he offered to pay the money to the guardian, but the guardian refused to accept same, and that the exceptor herein knew of such offer. The administrator testified also that on account of litigation at Cheyenne, Wyoming, he could not safely distribute the estate, and felt that it would be sometime before the estate could be safely distributed, but that he was ready and willing at all times to distribute *263 the estate to anyone who was properly qualified to receive the money.
It is a very well known principle of law that a fiduciary who has money in his hands, but which cannot be safely distributed, must deposit the same so that a reasonable and fair rate of interest may be procuréd thereon. The record discloses that Mr. Atwood, the administrator, did not take any formal order from the court to. deposit this money, but, acting under the authority of the provisions of Section 9648, General Code, he deposited this money in The Dollar Building & Loan Company. The section above mentioned is a part of the Building & Loan Code of Ohio, and reads as follows:
Section 9648. Receiving of Deposits: Joint Accounts. — To receive money on deposits, and all persons, firms corporations and courts, their agents, officers and appointees may make such deposits and stock deposits, but such corporation shall not pay interest thereon exceeding legal rate.”
Under provisions of this section, and the duties of a fiduciary as laid down in Section 515 of Rockels Probate Practice, the administrator on April 26, 1926 deposited $1900.00 with The Dollar Building & Loan Company of Columbus, Ohio, and received his certificates therefor. He collected interest from that time up until September 26, 1931, and charged himself therewith, as shown by his account.
The statute governing an investment by fiduciaries prior to January 1, 1932, provided that fiduciaries might invest money which required investment, in certain forms, and also provided that a fiduciary might invest in such other investments as the Probate Court should approve.
We do not believe this deposit constituted an investment, it was simply a deposit made for temporary purposes-so that it could be distributed at any time it was safe or at any time someone was qualified and legally authorized to receive the distribution. In our opinion the executor exercised the degree of prudence which a person in ordi *264 nary circumstances would exercise, and also followed the law in making the deposit as above specified.
We now come to the other contention of the executor that the fiduciary did not procure the order of the court. As we have above stated we believe that an order of the court was not necessary in view of the statute which we have above quoted. But even though the order of the court had not been procured, we find that the second account shows he deposited the certificates in the building and loan, which account was advertised and confirmed, and that no exceptions were filed thereto. It is our opinion that confirmation of the account acted as an approval of the investment.
“Where a trustee purchases with funds in his hands bonds constituting the highest form of investment known to the law, and the investment is reported to the court in his account which is confirmed in due course, such confirmation operates as an approval of the investment as fully as though a prior formal order had been made.” Am. Bonding Co. v. Second National Bank & Healy Trustee, 22 C. C. (N. S.) 177.
The third account was filed on August 30, 1933. This is the one to which the exceptions are directed. In this account the administrator charges himself with $2374.50, together with additional interest making a total of $2500.79. He then credits himself with $565.70, which includes the partial distribution hereinbefore mentioned, leaving a balance of $1935.09. If we understand the account correctly, the administrator fails to charge himself with the amount of money still remaining in the Huntington National Bank, with interest thereon, and we therefore must sustain the exceptions in that respect, and for the reasons above given the second exception is overruled, and an order may be drawn accordingly.